AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of Delaware

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

a black Apple I Phone cellular telephone using phone number 302-415-5088/International Mobile Subscriber Identity (IMSI) 310410927642101

Case No. 21-258M

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein

located in the _____ District of ___Delaware___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

FILED
SEP 17 2021
U.S. DISTRICT COURT DISTRICT OF DELAWARE

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C 371 | Conspiracy |
| 18 USC 1201 | Kidnapping |
| 18 USC 2261 | Stalking |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Applicant's signature
Joseph Oliver, FBI SA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___Cellular Phone___ *(specify reliable electronic means)*.

Date: 09/17/2021

Judge's signature

City and state: Wilmington, Delaware

MAGISTRATE JUDGE MARY PAT THYNGE
*Printed name and title*

Confirmed the signature & identity of the Apt [affiant] w/ 9/17/21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF a black Apple I Phone cellular telephone using phone number 302-415-5088/International Mobile Subscriber Identity (IMSI) 310410927642101 | Case No. 21-258M |

FILED

SEP 17 2021

U.S. DISTRICT COURT DISTRICT OF DELAWARE

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, **Joseph M. Oliver**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. The United States is investigating the kidnapping and homicide of a female victim, Keyonna PERKINS ("PERKINS"), which respectively occurred in the Districts of Delaware and Maryland, by unknown actors. The investigation concerns possible violations of kidnapping (18 U.S.C. § 1201); conspiracy (18 U.S.C. § 371); and stalking (18 U.S.C. § 2261) (collectively, "THE OFFENSES").

2. This affidavit is in support of a search warrant for the cellular telephone using phone number 302-415-5088 with International Mobile Subscriber Identity 310410927642101 and International Mobile Equipment Identity 35381308508423099 (hereinafter "TARGET TELEPHONE"), as described in Attachment A, where there is probable cause to believe that the items listed in Attachment B—evidence of THE OFFENSES—will be found.

### AGENT BACKGROUND

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 210(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of

Title 18 of the United States Code. I have been a Special Agent with the FBI for over twenty-two (22) years. I have received on-the-job training regarding the provisions of the Federal Laws administered under Title 18 and Title 21 of the United States Code.

4. Since January of 2013, I have been assigned to the Wilmington, Delaware Resident Agency of the Baltimore Field Office of the FBI, where I am responsible for drug, violent crime, and criminal enterprise investigations. In the course of these investigations, I have participated in the execution of search warrants and the seizure of evidence relating to drug and violent crime activities.

5. I have participated in the investigation and prosecution of individuals involved in kidnapping and/or homicide. I have conducted physical and electronic surveillance, debriefed confidential sources, interviewed witnesses, analyzed telephone records, reviewed records, and reviewed tape recordings of conversations pertaining to homicide and kidnapping. I have participated in the preparation and execution of search warrants resulting in the seizure of DNA and other evidence in violent crime investigations.

6. I am aware that individuals commonly use cellular telephones in furtherance of their criminal activities and frequently change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance. I am also aware that individuals often speak in vague, guarded, or coded language when discussing their illegal activity in an effort to further prevent detection.

7. The facts set forth in this affidavit are based upon my personal knowledge obtained during my participation in this investigation, review of documents, knowledge obtained from other individuals including law enforcement personnel, and communications with others who have personal knowledge of the events and circumstances described herein. Because this

affidavit is submitted for the limited purpose of establishing probable cause in support of a search warrant, this affidavit does not set forth each and every fact learned by me or other agents during the course of this investigation. The property to be searched is the TARGET TELEPHONE described in Attachment A, which your affiant knows to be in the custody of the Wilmington Delaware Police Department. Attachment B details the items to be seized, which are believed evidence of THE OFFENSES; fruits of THE OFFENSES; or property designed for use, intended for use, or actually used in committing THE OFFENSES. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B

## PROBABLE CAUSE

8. On or about June 6, 2017, several events took place that formulate the basis for this affidavit. First, your Affiant knows that several individuals who were looking for Markevis STAFORD ("STANFORD") waited in an apartment complex near Four Seasons Parkway, behind the Shop Rite, in Newark, Delaware where STANFORD and his girlfriend, PERKINS, lived (hereinafter "Stalking"). Second, your Affiant knows that several individuals kidnapped PERKINS from the apartment complex parking lot shortly after 11:00am (hereinafter "Kidnapping"). Third, your Affiant knows that many of the same individuals, with PERKINS in the trunk of the car, lured STANFORD out of the apartment and subsequently shot at him as he was walking on the southbound shoulder of Rt. 896 (hereinafter "896 Shooting"). Fourth, your Affiant knows that a smaller group if these individuals transported PERKINS, in the trunk of a silver Hyundai Sonata, to Elkton, Maryland, before shooting her several times and leaving her, deceased, on the side of a gravel road (hereinafter "Murder"). Finally, your Affiant knows that, approximately two hours after the murder, some of these individuals discovered and shot at

3

STANFORD near 6th and Spruce Streets in Wilmington, Delaware ( hereinafter "6th and Spruce shooting"). [1]

9. Your Affiant knows the two shootings at STANFORD - the 896 shooting and the 6th and Spruce shooting – are related to each other and to the kidnapping and murder of PERKINS, for several reasons. STANFORD was the target of both shootings, and the kidnapping and murder victim was his girlfriend. Your Affiant knows that STANFORD had been engaged in an ongoing feud since approximately 2011 with PRITCHETT and several associates. The ongoing feud has involved multiple shootings and at least one robbery – by STANFORD, of PRITCHETT and another associate – in 2017. After PRITCHETT was arrested for the 6th and Spruce shooting, his third phone call was to Dontae SYKES ("SYKES"), a known associate who has multiple prior felony convictions. Finally, phones connected to PRITCHETT, SYKES, and their associates were shown by cellular phone location data to be at or near the location of the Kidnapping, 896 Shooting, and/or 6th and Spruce shooting on June 6, 2017.

### 896 Shooting

10. On or about June 6, 2017 at approximately 11:53 a.m., Delaware State Police ("DSP") responded to Leisure Fitness, 231 Executive Drive, Newark, Delaware, for a reported drive-by shooting. Upon arrival, DSP met with and interviewed STANFORD, the victim of the shooting. STANFORD advised he was walking on the southbound shoulder of Rt. 896 when a metallic-in-color Hyundai sedan pulled up and fired several shots in his direction, none striking

---

[1] During that shooting, at approximately 2:30 p.m., a six-year-old child was struck in the face by a bullet. The child was transported to a local hospital and, after months in critical condition at the hospital and then in rehabilitation facility, he is now home. PRITCHETT is the indicted suspect in that shooting.

4

him. STANFORD said he then ran into Leisure Fitness. STANFORD was otherwise uncooperative with DSP and refused to give a description of the suspects in the vehicle, only stating they were unknown males. DSP was able to locate a crime scene on the southbound shoulder of Rt. 896 and recovered nine (9) spent 9mm shell casings.

### The Kidnapping

11. One June 6, 2017, at 5:20 p.m., NCCPD responded to STANFORD's residence, 6 Winterhaven Drive, Apt. 5, Newark, Delaware, for a missing person complaint. Upon arrival, NCCPD contacted the victim's mother, who had reported her daughter, PERKINS, missing. PERKINS' mother stated that she arrived at her daughter's apartment and found it unlocked and ransacked, with the televisions smashed. Through further investigation, officers determined that PERKINS was STANFORD's girlfriend and the two lived together at the apartment. While NCCPD was investigating this complaint, STANFORD returned to his apartment and was transported to the Wilmington Police Department ("WPD") for a formal interview.

12. During STANFORD's interview, officers discovered that he was the intended victim of a second drive-by shooting that same day, in the area of E. 6th and N. Spruce Streets in Wilmington, Delaware.

13. STANFORD also relayed that PERKINS sent him several text messages earlier that day reporting that she was being stopped by the police; that the police were following her back to the apartment; and then that the police left. NCCPD executed a search warrant for STANFORD's phone, which revealed the following text messages consistent with STANFORD's story:

- 11:21 a.m., PERKINS sent STANFORD a text message: "The police just pulled me over get out."

5

- 11:29 a.m., PERKINS sent STANFORD a text message: "it's cops they taking me I think."
- 11:47 a.m., PERKINS sent STANFORD a text message: "They following me the house"
- Finally, at 11:57 PERKINS sent STANFORD a text message: "ok they left are you still on 896."

STANFORD did not receive any further calls or text messages from PERKINS after this text. The assailants shot at STANFORD around 11:50 a.m. In reality, no such police activity (e.g. "the police just pulled me over") took place

14. NCCPD executed a search warrant at the apartment of STANFORD and PERKINS, based on the missing person report filed by PERKINS' mother and STANFORD. During the search, multiple swabs were taken from areas of the apartment where it appears the apartment had been searched and ransacked.

## The Murder

15. At approximately 2:02 p.m. on the same day, Elkton Police Department (EPD) responded to a utility road off of Ross St. in Elkton, Maryland for a report of a found body. They discovered a black female deceased from what appeared to be several gunshot wounds to her upper body and head. The black female was later identified as PERKINS. EPD was able to confirm through video surveillance and interviews that PERKINS is believed to have been shot at the location she was found between 12:12 p.m. and 12:19 p.m. on June 6, 2017.

16. Residential video surveillance footage shows what appears to be a silver Hyundai sedan entering and exiting the location where PERKINS' body was found around the time that gunshots were heard by area residents. In the video footage, I can clearly see that the Hyundai has damage to the rear passenger side quarter panel. This damage appears to be black marks.

17. Your Affiant knows that Jacqueline EGERSON was the registered owner of a 2015 silver Hyundai Sonata hybrid that matches the appearance of the Sonata seen on residential

video from the Elkton crime scene – including the same wheels, black antenna, panoramic sunroof, and the same damage on the rear passenger side quarter panel. EGERSON is the mother of Jaclyn MCCAIN, who at the time was SYKES' girlfriend and is now his wife. EGERSON reviewed still photographs from crime scene surveillance and observed that the car at the crime scene appeared to be her car. Therefore, your Affiant believes that the car used un the Kidnapping and Murder was EGERSON's Sonata. On June 29, 2017, investigators searched the vehicle pursuant to a search warrant signed by this Court.[2]

### The Stalking

18. Your Affiant has reviewed video surveillance from the morning of the kidnapping and compared it with phone records from that dat. Around 8:00a.m. on June 6, 2017, a red Ford Explorer that matches the car known to your Affiant to be driven by SYKES is seen on video briefly leaving the area of PERKIN's apartment. It goes to a nearby shopping center and meets with the silver Hyundai Sonata hybrid described above. After a short time off camera, the Hyundai Sonata then goes to the area of PERKINS' apartment while the red Ford Explorer leaves the area.

19. Historical location data for phones belonging to MCCAIN and SYKES support MCCAIN's coming from the area of Rt. 40 and Rt. 896, towards the Four Seasons shopping center. At this time, she and SYKES were in phone contact. Records also support SYKES, who was near PERKINS' apartment, remaining in the area after what appears from video and cellular phone data to be a car swap. Your Affiant believes MCCAIN brought EGERSON's Hyundai Sonata hybrid to SYKES; the two switched cars; and SYKES returned to PERKINS' apartment

---

[2] Order No. 17-127M (Chief Magistrate Thynge, June 28, 2017).

7

complex with EGERSON's Sonata, while MCCAIN returned to Wilmington in SYKES' red Ford Explorer. Thus SYKES was in possession of the Hyundai Sonata just hours before it is seen on video near where PERKINS was murdered.

20. A review of the video footage shows PERKINS' vehicle, a reddish/maroon Chevrolet Camaro, traveling eastbound on Four Seasons Parkway at 10:48 a.m. At 10:56 a.m., video surveillance shows PERKINS enter the McDonald's located at 2351 S. College Ave, Newark, Delaware (near the intersection of Routes 40 and 896). Around 11:00 a.m., DelDOT video shows PERKINS' Camaro turn from Rt. 40 (coming from the area of McDonald's) back onto Rt. 896 northbound (towards her apartment). Less than one minute later, the same camera shows a silver Hyundai sedan, matching the surveillance footage of the car near where PERKINS' body was found one hour later, follow through the same stop light.

21. PERKINS Camaro was later found with the McDonald's food still inside. Your Affiant therefore believes that she was kidnapped from the parking lot and never made it back into her apartment. Thus, the text messages mentioned in paragraph 13, above, was sent by the kidnappers in an effort to lure STANFORD out of the apartment.

### Subsequent Investigation

22. Your Affiant knows that MCCAIN and SYKES are connected to PRITCHETT via telephone toll records from March 5, 2017 through the week of the June 6, 2017 kidnapping of PERKINS, as well as through social media. Further, in July, MCCAIN admitted to interviewing officers that she had been in a relationship with SYKES since February 2017. The two were married in November, 2017, after MCCAIN learned of the existence of a grand jury subpoena.

23. This Court has signed multiple 18 U.S.C. Section 2703(d) orders for SYKES, PRITCHETT, MCCAIN, and known associates.[3] Your Affiant and other FBI investigators have analyzed the received results, which confirmed that SYKES, PRITCHETT, and MCCAIN were all in the Newark area, near PERKINS' apartment, on the morning of the Stalking, Kidnapping, and Murder.

### PRITCHETT's Phone Location on June 6, 2017

24. Your Affiant knows that PRITCHETT was using at least two (2) phones on June 6, 2017. The first was subscribed to a PRITCHETT family member, but a Delaware Justice Criminal Information System search linked that number to PRITCHETT on at least five (5) police reports. The second (the TARGET TELEPHONE) was subscribed to "Tucker Maxx" which your Affiant knows to be an alias for PRITCHETT. The TARGET TELEPHONE was recovered from PRITCHETT when he was arrested the day after the Kidnapping/Murder.[4] Common call analysis on both phones for June 5-6, 2017, revealed activity consistent with PRITCHETT having them in his possession on those days.

25. Review of information pursuant to 2703(d) orders demonstrates that PRITCHETT's phones, including the TARGET TELEPHONE, were in the area of PERKINS' apartment in the early morning hours of June 6. This location data shows that PRITCHETT's phones were in the area of PERKINS' apartment at the approximate time of the Kidnapping and

---

[3] Order Nos. 17-158M, 17-159M, 17-169M, 17-192M, 17-195M, 17-196M.

[4] The TARGET TELEPHONE has been in law enforcement custody since PRITCHETT's arrest (and PRITCHETT has remained detained pending trial)

9

at the time of the 896 shooting. That location data is consistent with PRITCHETT's presence at the Stalking, Kidnapping, and 896 shooting.

26. Later that afternoon, PRITCHETT's phone is in Wilmington around the time of the 6th and Spruce shooting (approximately 2:30 p.m.). PRITCHETT's phone then shows him on the south side of Wilmington approximately ten minutes after the shooting of the six-year-old, consistent with having moved south from the area of the shooting. PRITCHETT's phone location data then shows him proceeding further south to the Bear, Delaware, area. At the time PRITCHETT was moving south from the area of the shooting, the TARGET TELEPHONE was in contact with Dwayne WHITE, a convicted felon whom your Affiant knows to be a criminal associate of PRITCHETT's and whom your Affiant knows to be connected to the same individuals who engaged in the ongoing feud with STANFORD.

27. Your Affiant knows that in June of 2017, PRITCHETT drove a 2007 white Chevrolet truck, Delaware registration C18039, registered to April Pritchett. At the approximate time of the 6th and Spruce shooting, in which STANFORD appeared to be the target, PRITCHETT's white truck is seen on video on the block where the shooting took place.

28. During the investigation, a Confidential Source ("CS-1") was interviewed. CS-1 indicated that a group of men, including PRITCHETT, kidnapped a woman matching PERKINS' description from her apartment complex on June 6, 2017. CS-1 was shown a photograph and positively identified PRITCHETT as being involved in the Kidnapping. CS-1 is proven reliable to your Affiant because of information s/he provided that has been independently corroborated.

29. On June 8, 2018, your Affiant submitted and was authorized a search warrant for the TARGET TELEPHONE.[5] As part of the search of the TARGET TELEPHONE, contents of the device were downloaded and analyzed by investigators. As part of the downloaded information, the visual depictions of TARGET TELEPHONE location data were not transferred, or were not transferred completely. It is the intention of your Affiant to search the TARGET TELEPHONE for data and information that was not, or not completely transferred during the original authorized search.

## CONCLUSION

30. Based on all of the foregoing information, it is my belief that there is probable cause to believe that on the TARGET TELEPHONE, there exists evidence, and/or instrumentalities of a violation of Title 18, United States Code, Sections 1201 and 1111 as listed in Attachment B. By this affidavit and application, I request that the Court issue a search warrant to search the SUBJECT TELELPHONE, as described in Attachment A, and subsequently search the TARGET TELEPHONE, for the items listed in Attachment B.

31. I further request that the Court seal the warrant and the affidavit and application in support thereof, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office and may be served on Special Agents and other investigative and law enforcement officers of the Federal Bureau of Investigation, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant. These documents pertain to and discuss an ongoing criminal investigation that is

---

[5] Order no 18-108M (Chief Magistrate Thynge June 8, 2018)

11

neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. Sealing these documents will also better ensure the safety of agents and others.

Respectfully submitted,

Joseph M. Oliver
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on September 17, 2021.

HON. MARY PAT THYNGE
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT "A"

### PROPERTY TO BE SEARCHED

1. The cellular telephone using phone number 302-415-5088 with International Mobile Subscriber Identity 310410927642101 and International Mobile Equipment Identity 3538130850842309

## ATTACHMENT B

## ITEMS TO BE SEIZED

1. All records on the TARGET TELEPHONE described in Attachment A that relate to violations of Title 18, United States Code, Sections 1201 and 1111 ("THE OFFENSES") since March 5, 2017, regardless of the application used to create, store, or share same, including:

   a. Text messages and other electronic communications (including but not limited to MMS messages, SMS messages, FaceTime information, and Facebook messages) regarding violations of THE OFFENSES;

   b. contact lists and related identifying information;

   c. call logs; and

   d. location information.

2. Evidence of user attribution showing who used, controlled, or owned the TARGET TELEPHONE at the time the things described in this warrant were created, edited, or deleted; such as logs, phonebooks, saved usernames and passwords, documents, communications, audio files, video files, social media accounts and posts, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.